[Civ. No. 2104.   First Appellate District.—April 13, 1918.]

## ARMOUR & CO. (a Corporation), Appellant, v. R. ROSEN-BERG & SONS CO. (a Corporation), Respondent.

CORPORATION LAW—FINANCIAL AID TO CUSTOMERS.—Trading corporations may, in furtherance of their own interests, extend financial aid to their customers, and this aid may be in the form of a guaranty.

ID.—BENEFIT TO CORPORATION IMMATERIAL.—The right of trading corporations to extend financial aid to customers is not dependent upon, nor is it in any manner impaired by, the fact that the welfare of the corporation was not promoted by the transaction.

ID.—GUARANTY OF CUSTOMER'S DEBTS—IMPLIED POWER OF MANAGER OF CORPORATION.—The general manager of a trading corporation has ostensible authority to guarantee the debt of a customer where such manager for several years had the exclusive control and management of the business of the corporation, and had executed previous guaranties of a similar nature without his authority ever having been questioned by the corporation.

ID.—ACCEPTANCE OF BENEFITS—ESTOPPEL.—A corporation is estopped to deny the authority of its general manager to guarantee the account of its customer with another company, where it has received benefits under the contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Herrington & Clausen, for Appellant.

Louis H. Brownstone, for Respondent.

KERRIGAN, J.—This is an action brought upon two guaranty contracts executed by defendant corporation for the payment of certain merchandise sold and delivered by plaintiff corporation to one W. Y. Lawton, an individual doing business under the fictitious name of "American Packing Company." Judgment was rendered in favor of defendant on the ground that the manager of defendant corporation had no authority to execute the guaranties in question.

Briefly stated, the facts are as follows: Plaintiff is a manufacturing and trading corporation dealing in food products. Defendant is a business corporation dealing, among other things, in new and second-hand bottles. American Packing Company originally was a corporation engaged in manufacturing, and in the conduct of its business prepared and put up in bottles salad oil which it sold to the trade. It was adjudicated bankrupt in March, 1913. W. Y. Lawton was one of its stockholders, and after the bankruptcy proceedings were closed he began and continued in the same line of business on his personal account. Defendant was one of the creditors in bankruptcy of the American Packing Company, having a claim for the sum of $875.58. No dividend was received on this account from the assets of the defunct corporation, and it was a total loss to the defendant. Later on, however, the claim was paid in full by Lawton after he had resumed the business on his individual account. This payment was made in pursuance of an agreement with the manager of defendant under the following circumstances: When Lawton resumed business he did so under the name of the American Packing Company. At that time Lawton was to the knowledge of defendant's director and manager, Joseph Rosenberg, without resources or commercial credit; and in order to begin and continue business he made an agreement with defendant through Rosenberg, its general manager, by the terms of which defendant agreed to guarantee payment of Lawton's purchases of raw material for his manufactures, and further to sell him on credit such bottles as he might need in preparing and putting up his food products. In return for this financial assistance on the part of defendant, Lawton as an individual assumed and agreed to pay to defendant the amount of its claim against the American Packing Company, and also agreed to purchase exclusively from defendant such bottles as his business needs

required. In the bankruptcy proceedings certain personal property of the defunct corporation was sold, and as part of the agreement with Lawton defendant advanced the sum of $310 for its purchase, which Lawton agreed to repay, and this property was acquired by Lawton. These agreements were substantially performed by Lawton. He paid the amount of defendant's claim against the defunct company, repaid the sum advanced for the purchase of the bankrupt stock, and during the period from July, 1913, to April 26, 1916, purchased all his bottles from defendant, amounting to some fifteen thousand dollars. This agreement between Lawton and defendant had not been authorized by defendant's board of directors by resolution or other formal order. It was, however, made known by Rosenberg to another director, who was also president of defendant company. Defendant's board of directors consisted of five persons, two of whom resided in Chicago, and they only came to San Francisco, where the principal place of business of the corporation was situated, once a year. The other three, of whom Rosenberg was one, resided in San Francisco.

After the arrangement with Lawton, Rosenberg guaranteed, in the name of his company, certain purchases made by Lawton, among them being those which are the subject of this action. Except as to the date, the guaranties are duplicates, and the amount of goods sold thereunder total $1,840. In form they are as follows:

"San Francisco, Mar. 2, 1916.

"Armour & Co.
   "Battery and Union,
       "San Francisco, Cal.
"Gentlemen:
   "We herein guarantee payment of forty (40) barrels of salad oil to be delivered to the American Packing Company.

"Very truly yours,<br>"R. ROSENBERG & SONS CO.<br>"By J. R."

The evidence conclusively shows that Rosenberg had the entire and complete management of Rosenberg & Sons Company, defendant herein, and transacted all of its business, and this fact is not disputed. The evidence further establishes the execution by defendant, through its manager, of the guaranties sued upon as well as many others covering a

period of two years. The guaranties sued upon were the last of a series. Those theretofore made were for approximately twenty thousand dollars, and were paid. It was proved that the sales to Lawton were made by plaintiff relying upon the guaranties, and that invoices of goods and monthly statements were sent by plaintiff to defendant, which in turn forwarded them to Lawton. At first Lawton made payments direct to plaintiff, but later on he sent them to defendant, which from time to time sent them to plaintiff. It further appeared that defendant kept files of carbon copies of the numerous guaranties, and of letters relating to Lawton's purchases and the state of his indebtedness. There were, however, no entries in defendant's books of account showing that guaranties had been executed.

Under these circumstances it is the claim of appellant that Rosenberg had complete authority to bind his company in issuing the guaranties.

It is not contended that trading corporations may indiscriminately guarantee their customers' purchasers from others, or exercise generally the functions of corporations chartered for the special purpose of executing surety or indemnity contracts. Whether such a corporation would have power to lend its credit to another with whom it had no business, or where such an accommodation had no relation to the business it was organized to transact, is not here presented. The rule denying corporations the right under such circumstances is one of strict construction applied by the earlier cases based upon the doctrine of *ultra vires,* that a corporation may not enter into a contract or do any act not specifically authorized. The contract here sued upon involves a different principle. The question presented by the different assignments of error is whether or not the general manager of a trading corporation has the implied power to guarantee debts or obligations of a customer or other person when such course is deemed by him necessary for the promotion of the business of the corporation. The obligation here guaranteed had relation to the corporation's own interest, and was designed to promote its own business. In such a case the rule now seems to be firmly established that trading corporations may, in furtherance of their own interests, extend financial aid to their customers. (*Hess* v. *Sloane,* 66 App. Div. 522, [73 N. Y. Supp. 313]; *Bacon* v. *Montauk*

*Brewing Co.,* 130 App. Div. 737, [115 N. Y. Supp. 617];
*Winterfield* v. *Cream City Brewing Co.,* 96 Wis. 239, [71
N. W. 101]; *Koehler* v. *Reinheimer,* 26 App. Div. 1, [49
N. Y. Supp. 755]; *Timm* v. *Grand Rapids Brewing Co.,*
160 Mich. 371, [27 L. R. A. (N. S.) 186, 125 N. W. 357,
358]; *McQuade* v. *Enterprise Brewing Co.,* 14 Cal. App.
315, [111 Pac. 927].)   And this aid may be in the form of
a guaranty.   (10 Cyc. 1105.)

Nor does the fact, as suggested by counsel for respondent,
that the arrangement did not prove profitable, affect the
power.   The right is not dependent upon, nor is it in any
manner impaired by, the fact that the welfare of the cor-
poration was not promoted by the transaction.   The power
existing, the result of its exercise becomes unimportant.

In the instant case it is manifest that the contract entered
into by Rosenberg and Lawton was one made in furtherance
of the interest of the corporation defendant.   The American
Packing Company, a customer, was in its debt to a consid-
erable amount, which debt without the arrangement was a
total loss.   The agreement for the payment of the debt, and
the promise of Lawton to purchase exclusively from the de-
fendant all the bottles required in his business, establish this
fact.   In both of these particulars the corporation was bene-
fited by the agreement.

Concluding, as we do, that the defendant corporation,
therefore, had the implied power to enter into this contract,
it only remains to be considered whether or not under the
circumstances Rosenberg, as manager, had ostensible power
to execute the guaranties, there being no evidence of express
authorization.

As before stated, Rosenberg was not only a director of the
company, but for several years he had entire and exclusive
control and management of its business.   After making the
agreement he executed guaranties in conformity therewith
during a long period of time and covering numerous trans-
actions.   This authority was never questioned.   The bills
guaranteed were always paid.   This course of business deal-
ing was sufficient to justify plaintiff in believing that Rosen-
berg had the power to contract as he did, and the defendant
corporation was bound by his acts to the same extent as
though his power was expressly granted.   (10 Cyc. 937.)

In addition thereto we think that the defendant is further
estopped to deny the authority of its manager.   Having re-

ceived benefits under the contract, it should not be permitted to repudiate the burdens resulting therefrom.

A discussion of the claimed ratification is unnecessary.

For the reasons given the judgment is reversed.

Zook, J., *pro tem.*, and Beasly, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 13, 1918, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 10, 1918.